UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61470-CIV-GRAHAM/DUBÉ

MICHAEL A. JONES,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #16) and the Motion for Summary Judgment filed by the Defendant (D.E. #21) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff, Michael A. Jones (hereinafter "Jones" or "Plaintiff").

### I. FACTS

On June 17, 2006, the Plaintiff filed an application for supplemental security income. (R. 87-89).[1] The application was denied initially and on reconsideration. (R. 70-75, 80-81). An initial hearing was held on August 22, 2008. (R. 18-54). Following the hearing, the ALJ issued a decision finding the Plaintiff not disabled. (R. 6-17). A request for review filed with the Appeals Council was denied. (R. 1-4).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

The Plaintiff, age 42 at the time of the hearing on August 22, 2008, testified he is 6'1", weighs between 190-195 pounds and gained 30 pounds in the last 60 days. (R. 24). Jones who is not married, stated he has never had a driver's license because he cannot pass the test. (R. 24-25). According to the Plaintiff, he has an 8th grade education and did not complete any other job training courses. The Plaintiff stated he had three prior jobs because of being previously incarcerated. (R. 25). Jones described one of his previous jobs as construction clean-up for the Labor Pool. He described said job as, "... moving stuff, lifting stuff, or sweeping, whatever they had." Jones added that prior to construction clean-up, his job was at a furniture company where his work required, "... putting desks and wrapping the mirrors in plastic and Styrofoam, putting them in the boxes getting them ready for shipping." The Plaintiff stated his only other job was stacking boxes of tomatoes at the Tomato House. (R. 26).

Jones asserted he worked at the furniture company for about a year and at the Tomato House for 6 months. (R. 26). The Plaintiff said he had done "really nothing" over the previous 5-6 years and had been out of prison for the previous four years. The Plaintiff further stated he was in prison for either armed robbery or burglary for a period of over nine years. (R. 27). The Plaintiff claimed he worked for the Labor Pool for about 1-1 1/2 years. He further claimed all his work experience came between the years 1998-2000. (R. 28). The Plaintiff stated that while his disability application listed a disability onset date of May 21, 2001, he had actually been disabled long before that date. He explained that his family who previously was taking care of him stopped so he filed this third application. (R. 29).

According to Jones, he left his job at the Tomato Company for the job at the furniture company; was fired from his job at the furniture company; and was fired from his job at the Labor Pool because he threw a sign across his bosses desk. (R. 29-30). The Plaintiff testified he is unable

to work because of problems with his wrist, shoulder, back and a hernia which needed to be operated on. He explained he has not had the surgery performed because he does not have insurance. (R. 31). Jones further testified he cannot work because he has been HIV positive since January 29, 1991, which gives him diarrhea and requires the use of a bathroom 7 times a day. (R. 31-32). He added that he has anger problems, hallucinates, hears voices and sees things. The Plaintiff said he has been on and off medication for his anger problems since 1986. (R. 32).

The Plaintiff described his resulting limitations as follows:

> Because I can't lift, like I can lift more than, if I lift more than like 20 pounds I become unbalanced and fall down sometimes. Some mornings I can't get out of bed. It take two and three hours for me to get out of bed. Someone got to help me, you know, get going. Very weak and some days I feel a little better than others. Like today I feel a little better than I have felt in the last couple of days.

(R. 33). The Plaintiff testified that his pain is in his wrist, shoulder and back. He said he feels really sick but "they" said I do not need medication. Jones described the pain in his wrist as a sharp pain that partially numbs his whole hand and his arm. He also said the other pain is just aching. (R. 33). Jones testified that the pain in his lower back is a sharp pain that goes into his spine and the top of his ribs. Jones also testified that the pain is in the center of his back and essentially straight up. (R. 34).

The Plaintiff testified that his back hurts him constantly every day; his shoulder also hurts constantly for which he takes Tylenol; and the same for his wrist. (R. 34-35). Jones added that the Tylenol helps his wrist a little bit. The Plaintiff said that on a scale of 1-10, his wrist and back are a 9 when its bad, but a 5 or 6 most of the time. (R. 35). The Plaintiff stated he had seen a doctor at a correctional facility in 2008. He explained that he was taken to the correctional facility because of possession of cocaine. (R. 36). The Plaintiff asserted he was taken for treatment while at the

correctional facility. Jones testified he was not currently taking medications because he had run out and he did not have insurance. He added that the medications he was previously taking were for hallucinations, hearing voices and depression. (R. 37).

According to the Plaintiff, the medications were working. The Plaintiff further testified he never took pain medication aside from Tylenol. (R. 38). Jones stated his second cousin who brought him to the hearing, does his cooking, cleaning and washes his clothing. (R. 38-39). Jones added that he can do light chores like sweep and mop, but he cannot bend. The Plaintiff stated he does not visit friends or family and prefers to be alone rather than socialize because he gets into trouble and fights. (R. 39). The Plaintiff said he is capable of bathing and washing himself and he can read the Bible "a little bit." The Plaintiff testified that the maximum he could lift is 25 pounds because more would put strain on his arm and shoulder. He also stated he could probably lift 10 pounds frequently. (R. 40).

Jones testified he could sit for 1 or 2 hours at a time assuming he did not need to get up and use the bathroom. He also testified he could probably sit for about 2 hours, get up, and then sit back down for another 2 hours. When asked, "... if you had to work eight hours you could, you could probably sit about six hours of the day?" The Plaintiff replied, "Yes, sir, probably something." (R. 41). According to Jones, he could walk a couple of blocks and then would need to sit down and wait for 30 to 45 minutes because he has problems breathing. He added that he could walk a maximum of 30 minutes before having to stop and then he could continue walking. (R. 41). The Plaintiff also testified he could stand for 20-30 minutes before having to sit down.

The Plaintiff submitted he has problems with his memory and forgets certain things. He stated that had he not been reminded of his hearing date the day before, he would have forgotten to show up. Jones stated the only benefits he receives are food stamps, although he previously received

4

unemployment benefits. The Plaintiff testified he does not receive any income from his family. (R. 42). Jones described his typical day as waking up, having a cup of coffee and maybe eating something; then he spends most of the day watching television and laying down. (R. 44). He stated that his cousin prepares his meals but if he feels "pretty good" he will walk to the store and buy a soda. The Plaintiff said he had been to church the 3 prior weeks and that services last from 11:00 a.m. to 2:30 p.m. or 3:00 p.m.. (R. 44).

According to the Plaintiff, he feels weak 3 or 4 days out of the week. Jones said that on those days he must lay down "take it easy" and drink a lot of water. The Plaintiff asserted that when he was working he did not really get angry on the job outside of the instance where he threw the sign. Jones also asserted he did not have a problem with his bosses, but did have problems with the police who he felt picked on him. (R. 45). Jones testified he hears his deceased grandmother's voice about 3 or 4 times a week. He also testified he sees his deceased aunt 2 or 3 times a week, although he is aware that he is hallucinating. (R. 46). The Plaintiff stated he sometimes gets warnings before having diarrhea and sometimes he does not. The Plaintiff also explained his previous testimony regarding days he cannot get out of bed and stated that his entire body is aching. He added that in a typical month half the days he is experiencing bad pain. (R. 47).

In addition to the Plaintiff's testimony, Howard Feldman, a vocational expert, testified at the Plaintiff's hearing. The VE described the Plaintiff's past relevant work as a general laborer, DOT #529.687-014, heavy, unskilled, with an SVP of two. The first hypothetical posed by the ALJ to the VE included an individual with the following limitations: able to lift or carry 20 pounds occasionally, 10 pounds frequently; sit, stand and/or walk 6 hours in an 8-hour workday; climb stairs, ramps continuously and climb ladders, ropes and scaffolds occasionally; no postural limitations; perform

simple, routine, competitive low stress repetitive tasks on a sustained basis in an 8-hour workday; simple decision making required; occasional close interpersonal interactions with co-workers and the public; and unable to perform complex and detailed tasks or to meet fast pace or high production demands. (R. 50). The VE responded that such an individual would be unable to perform the Plaintiff's past relevant work as it would be too arduous. However, the vocational expert opined that such an individual would be able to perform work as a fast food worker, DOT #311.472-010, light, unskilled, with an SVP of 2; factory packager, DOT #920.687-042, light, and unskilled; and mail clerk, DOT #209.687-026, light, and unskilled. (R. 51).

The ALJ then asked a second hypothetical wherein the facts from the first remained unchanged, except, the individual could only stand or walk about two hours in an eight hour work day. The VE opined that such a person would be limited to sedentary work rather than light work. The VE listed jobs that such a person could perform as toll ticket taker, DOT#211.462-038, sedentary, unskilled; bench assembly type work, DOT#726.687-010, unskilled; and cashier, DOT#211.462-010, light and unskilled. The VE explained that although it was listed as light in his opinion 50% of the work was sedentary in nature. (R. 52). In response to a question from the Plaintiff's attorney, the VE opined that if an individual spent over half the days in a month in bed because of pain and fatigue, such an individual could not perform work on a competitive basis. (R. 53).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal

issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had a severe back disorder. The ALJ also found that the Plaintiff's mental impairment of depression was not severe. (R. 11). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. The ALJ determined that the Plaintiff retained the residual functional capacity to perform sedentary work. (R. 14). The ALJ found that the Plaintiff was unable to perform any of his past relevant work. The ALJ further found at Step Five that based on the Plaintiff's age, education, work experience and RFC there were jobs which existed in significant numbers in the national economy that the Plaintiff could perform. (R. 16). The ALJ concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 17).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner

correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments

are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that she is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ's RFC determination for the Plaintiff is not well reasoned and conflicts with the regulatory definitions of sedentary and light work.

The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997), citing, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess ... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007). Additionally, SSR 96-8p states as follows:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

In the instant matter, the ALJ determined the Plaintiff's residual functional capacity as follows:

> ... to perform sedentary work as defined in 20 CFR 416.967 (a) except is able to lift and carry 10 pounds frequently and 20 pounds occasionally, can climb ladders, ropes, and scaffolds, and can perform simple, routine, competitive, low stress, repetitive tasks on a sustained basis over an 8 hour workday, in a stable work environment with no more than simple decision making required, occasional close interpersonal interactions with co-workers, occasional interaction with the public, but is unable to perform complex and detailed tasks or meet fast paced, high production standards.

(R. 14).

Social Security Ruling 83-10 defines sedentary and light work as:

> *Sedentary work.* The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

> *Light work.* The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10.

The Plaintiff contends that the ALJ's RFC is both confusing and lacking. Specifically, the ALJ erred in finding that the Plaintiff could lift more than what is defined by the DOT's sedentary work. The Plaintiff also contends that the ALJ erred in failing to specifically outline the Plaintiff's standing/walking abilities. The Court finds the Plaintiff's argument must fail for the reasons listed below.

As noted by the Defendant, the RFC is an assessment of the most a claimant is capable of doing not the lowest functional ability remaining. Therefore, after reviewing the medical evidence

of record in addition to the Plaintiff's testimony. The ALJ determined that the Plaintiff was generally limited to sedentary work, but the Plaintiff could also lift 10 pounds frequently and 20 pounds occasionally. As noted above, the Plaintiff's testimony is consistent with the ALJ's finding. (R. 40). Additionally, the Plaintiff's contention that the ALJ did not specifically mention the Plaintiff's standing/walking ability is also error. SSR 83-10 specifically states that sedentary work includes, "... periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." The ALJ found that the Plaintiff could perform sedentary work, the standing/walking limitations were incorporated therein. As such, it is the opinion of this Court that the Plaintiff's position lacks merit and the ALJ's decision is supported by substantial evidence.

The Plaintiff's other point of contention is that the ALJ failed to clarify the conflict between the Vocational Expert and the Dictionary of Occupational Titles.

A review of Social Security Ruling 00-4p sets for the standards that an ALJ must follow when conflicts exist between vocational expert testimony and the DOT. SSR 00-4p requires the ALJ to perform two tasks: first, determine whether there is a conflict between the VE's testimony and the specific job description contained in the DOT; and second, if such conflict exists, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." SSR 00-4p.

In the instant matter, the Plaintiff contends that in the instant matter such a conflict exists.

Namely, the Plaintiff contends all of the jobs cited by the VE were light jobs, yet the VE testified they were sedentary; and when the VE was provided a hypothetical question limiting the Plaintiff to simple, repetitive tasks, the VE opined that a plaintiff could perform jobs which required a reasoning level of three. Here, the ALJ posed the following hypothetical to the vocational expert:

> This individual can lift or carry 20 pounds occasionally, 10 pounds frequently. Sit six hours for an eight hour workday. Can stand and walk six hours for an eight hour workday. Can climb stairs, ramps continuously, however, only occasionally climb ladders, ropes, and scaffolds. Has no other postural limitations. Further, that the claimant can perform simple, routine, competitive low stress repetitive tasks on a sustained basis over a normal eight hour workday in a stable work environment. With no more than simple decision making required. Occasional close interpersonal interactions with co-workers. Occasional interaction with the public. But is unable to perform complex and detailed tasks or to meet fast pace or high production demands. Based on that assessment could a person such as the claimant perform past relevant work?

(R. 50). The ALJ also added, that the individual could only stand or walk about 2 hours in an eight hour work day. (R. 52). The VE responded that the individual could perform the jobs of a toll ticket taker, DOT#211.462-038; bench assembly type work, DOT#726.687-010; and cashier, DOT#211.462-010. (R. 52). The Plaintiff contends that the VE testimony conflicted with the DOT because the DOT defines all three jobs as "light" yet the VE stated one was sedentary, one was unskilled and the other was light and unskilled despite being 50% sedentary in nature.

The ALJ and the VE had the following colloquy:

> Q. Okay. Hold on, Doctor. Doctor, what is the source of your information, what's the text –
>
> A. <u>Occupational Outlook Handbook, Dictionary of Occupational Titles</u>, and, of course, the <u>Compu Business Patterns</u> (Phonetic).

13

> Q. Okay. If any responses to my questions are inconsistent with information in the <u>Dictionary of Occupational Titles</u> please identify such inconsistencies and explain why your opinion has differed from this authority.
>
> A. No, I think its all in accordance.

(R. 53).

> SSR 00-04p further states:
>
>> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

The Court does not find that error is present as the ALJ met the burden of inquiring as to whether a conflict between the VE testimony and the DOT exist. Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. <u>Id.</u> The Court agrees with the Defendant's position that the ALJ met the requirements of SSR 00-04p. Specifically, the ALJ asked whether a conflict existed, to which the VE replied that none was present. The VE also explained that while the job of Cashier was defined as "light," half the positions were performed as sedentary. As the Defendant also correctly notes, the DOT generally lists the maximum requirements of the occupations as generally performed rather than the entire range. <u>Page v. Astrue</u>, 484 F. 3d 1040, 1045 (8th Cir. 2007). Accordingly, the Court does not find that error is present, and thus, the ALJ's decision is supported by substantial evidence.

### III. <u>CONCLUSION AND RECOMMENDATION</u>

Based on the foregoing, this Court finds that the decision of the ALJ was supported by

14

substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED** for further evaluation. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #16) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #21) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Donald L. Graham, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 7 day of July, 2010.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE